SUPREME LODGE KNIGHTS OF PYTHIAS *v.* FEW.

1. Where a condition contained in a life-insurance policy issued by the Supreme Lodge Knights of Pythias to one of its members provided that "The contract evidenced hereby shall not begin until twelve o'clock noon of the day of the date hereof, and then the Supreme Lodge Knights of Pythias, hereinafter called the Society, will not be liable unless the said member has actually paid the membership fee and made the first monthly payment required while said member is in good health," and the policy was dated November 1, 1907, and delivered to the insured

on November 2, 1907, and the first monthly premium was due and paid on the 20th day of November, 1907, by the insured: *Held,* that relatively to delivering the policy and paying the premium as above stated, both acts were "contemporaneous" within the meaning of the contract in this case, and the policy of insurance became of binding force on the society on the 20th day of November, 1907, so far, at least, as this clause of the contract is concerned; and not before.

(a) Where in such a case the agent of the society knew the insured was not in good health after, the time the application for insurance was received, but before the policy was delivered to the insured, and the agent delivered the policy and received the first monthly payment from the insured with the same knowledge, the society will not be heard to set up as a defense to a suit on the policy that the insured was not in good health at the time of taking out the insurance on his life, but will be held to have waived the conditions in the policy to the effect that the insurer "will not be liable unless said member has actually paid the membership fee and made the first monthly payment required while said member is in good health."

2. Where on the trial of a suit brought by the beneficiary (widow of the insured), to recover the value of a life-insurance policy, the pleadings and evidence tended to show that the application of the insured was attached to the policy, and contained statements as to having only certain policies of insurance in other companies, and there was evidence to the contrary on the trial of the case, it was error for the court to direct a verdict for the plaintiff.

3. There is no merit in any of the other assignments of error.

OCTOBER 16, 1912.

Action upon insurance policy. Before Judge J. B. Park. Morgan superior court. September 5, 1911.

*Garrard & Gazan* and *Percy Middlebrooks,* for plaintiff in error.

*M. C. Few* and *F. C. Foster,* contra.

HILL, J. The insurance department of the Supreme Lodge Knights of Pythias issued a certificate of membership to Leon I. Few on the 1st day of November, 1907, insuring his life in the sum of $2,000 for the benefit of his wife, Mattie M. Few. This certificate was delivered to Leon I. Few, the insured, on the 2d day of November, 1907. The first monthly payment, or premium, necessary to put the certificate of insurance in force was made on the 20th day of November, 1907. The insured died on the 22d day of February, 1908. Proofs of the death of the insured were duly made and presented to the insurer, and payment of the certificate was refused. Subsequently Few's widow, Mattie M. Few, for whose benefit the certificate or policy was taken out, brought suit in Morgan superior court for the amount stated in the certificate. The defendant filed its answer, setting up various defenses to the

suit, among others that the policy was void because the insured was in ill health at the date of the delivery of the policy and at the date of the payment of the first premium. To this the plaintiff replied, that, even if these contentions were true, the defendant had knowledge of such illness, and waived the condition of the policy declaring a forfeiture on that ground by receiving the monthly premiums from the insured with knowledge of his illness. On the trial of the case on March 8, 1910, at the conclusion of the evidence the court directed a verdict for the plaintiff for the amount of the membership fee paid and the monthly payments made on the certificate during the life of the insured. The case was brought by writ of error to this court, and a decision rendered reversing the judgment of the court below for the reasons therein stated. See *Few v. Supreme Lodge Knights of Pythias*, 136 *Ga.* 181 (71 S. E. 130). After the case was returned for a second trial, it came on to be heard in the superior court on the 4th of September, 1911; and at the conclusion of the plaintiff's evidence the defendant moved for a nonsuit, which motion was overruled. After all the evidence was in for plaintiff and defendant, the court directed a verdict for the plaintiff for the full amount of the certificate, with interest and costs. To the overruling of the motion for a nonsuit, and to the direction of a verdict for the plaintiff, the defendant excepted.

1. This is the second time this case has been before this court. The former decision is reported in 136 *Ga.* 181. The conditions recited in the policy of insurance, and necessary to be considered in this case, are as follows:

"The contract evidenced hereby shall not begin until twelve o'clock noon of the day of the date hereof, and then the Supreme Lodge Knights of Pythias, hereinafter called the Society, will not be liable unless the said member has actually paid the membership fee and made the first monthly payment required while said member is in good health.

"Said monthly payments will be due and payable to the Secretary of the Section to which the member belongs, without notice, in advance, on the first day of each and every month. Failure to make any such payment on or before the 20th day of the month for which the same is due shall, ipso facto, from and after such

date, forfeit this certificate, subject to the provisions contained in paragraph 7 hereof.

"All of the conditions and provisions of the contract between the member and the Society are conditions precedent to any liability of the Society hereunder, and are to be deemed to be assented to and accepted without the necessity for the member's signature being affixed hereto.

"The Supreme Lodge Knights of Pythias is incorporated, and is a Fraternal Beneficiary Society, and no officer or representative thereof, or of any subordinate body thereof, has any right or power, by any statement, agreement, promise, or manner of transacting business, to waive the provisions or requirements of the contract between the member and the Society, or of the laws, rules, and regulations of the Society."

In construing portions of the conditions in the policy, this court on the former review of the case, held: "The certificate containing the further provision that 'no officer or representative thereof, or of any subordinate body thereof, has any right or power, by any statement, agreement, promise, or manner of transacting business, to waive the provisions or requirements of the contract between the member and the society, or of the laws, rules, and regulations of the society,' if the first monthly payment was made, not at the inception of this contract, but subsequently to the date of the certificate and while the member was not in good health, acceptance of such payment by a representative of the society, authorized to collect premiums for the latter, with knowledge at the time on the part of the representative that the insured was not then in good health, would not be a waiver by the society or estop it from contending that it was not liable because the insured was not in good health when the payment was made. *Springfield Fire &c. Ins. Co. v. Price,* 132 *Ga.* 687 (64 S. E. 1074) ; 3 Cooley's Briefs on Insurance, 2513. Aliter if delivery of the certificate and acceptance of the premium were contemporaneous. *Mechanics & Traders Ins. Co. v. Mutual Real Estate & Building Association,* 98 *Ga.* 262; *Johnson v. Ætna Ins. Co.,* 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92), followed in *Athens Mutual Ins. Co. v. Evans,* 132 *Ga.* 703-711 (64 S. E. 993). Under the evidence submitted, it was for the jury to determine whether the insured was in good health when the first monthly payment was made on November

20th, 1907; and if not, then whether the representative of the society, to whom such payment was made, had notice of the fact, and whether the delivery of the certificate and acceptance of the first monthly payment were contemporaneous." It is insisted that the word "contemporaneous" as used in the 2d and 3d headnotes of the *Few* case, supra, means "simultaneous," and "coincident." It is argued, that, under the former decision in this case, if the first monthly payment was made, not at the inception of the contract, but subsequently to the date of the certificate of insurance (Nov. 1st), and while the insured member of the society was not in good health, then the knowledge of that fact on the part of the collecting agent would not be a waiver of the conditions stated in the contract; that this court, when the case was here before, by the use of the word "contemporaneous" was differentiating and regarding as independent acts the date of the contract, its delivery to the insured, and the making of the first monthly payment. Of course, if this court meant to place the construction upon the contract of insurance as contended by the plaintiff in error, the plaintiff in the court below could not recover. But to this interpretation placed upon the former decision of this court we can not agree. The use of the word "contemporaneous," as used in that decision, was not intended to mean "simultaneous," or "coincident," but the word was rather used in the sense of contemporaneousness for a longer period of time than is implied in the words "simultaneous" and "coincident." The word as used meant the whole thing—not merely the delivery of the policy, for that would not complete the contract under its terms—but the delivery of the policy *and* the monthly payment of the premium on November 20, 1907. Both these acts were necessary to make the policy of binding force upon both parties to the contract. It was not complete without the contemporaneous act upon both these matters; and hence when the delivery of the contract of insurance was made on the 2d of November and the payment of the premium as demanded by the contract was made on the 20th of November, these acts were done contemporaneously within the meaning of the contract. It can not be held that the contract was of binding force at "twelve o'clock noon on the day of the date" thereof; for one reason, because the policy was not delivered on that date, but it was delivered on the day following. Besides, it appears from the contract itself, im-

mediately following the words last above quoted, "the society will not be liable unless the said member has actually paid the membership fee *and made the first monthly payment required,* while said member is in good health." Both these requirements had not been complied with on the 2d day of November, when the policy was delivered, and therefore it was not then of binding force; and it was held in the 1st headnote to the *Few* case, supra, that this was "a condition precedent to any liability of the insurer." The inception of the contract can not be, therefore, as insisted, at "twelve o'clock noon of the date" thereof, or on the following day when it was merely delivered, but by the very terms of the contract itself the inception was at a time when it became a valid, binding contract, and this was when the membership fee was paid, and the first monthly payment was made on the 20th day of November. No point is raised in the record that the membership fee was not paid, and the first monthly payment made on the 20th day of November, 1907, as specified in the contract. We hold, under the contract in this case, that receiving the policy or contract of insurance on November 2, 1907, and paying the first monthly premium on November 20, 1907, within the time named in the contract, were conditions precedent to establishing liability on the insurance company, or society, and in this view and with that meaning the word "contemporaneous" was used in the decision of the case when it was first before this court. See *McFarlane* v. *Robertson,* 137 *Ga.* 132 (73 S. E. 490).

If the delivery of the policy and the payment of the first monthly premium to the society were contemporaneous acts within the meaning of the policy, so as to make it binding only from the 20th day of November, 1907, was the contract void because of the condition in the policy that the society will not be liable unless the member has actually paid the membership fee and made the first monthly payment required "while the member is in good health"? It is insisted that at the time of the application and payment of the first monthly premium the insured was not in good health. The reply is, that the agent of the society knew that the insured was not in good health after the application was received and when the first monthly premium was paid; and the unbroken line of decisions in this State is to the effect that where a contract of insurance contains conditions and stipulations that the policy shall

be void for certain reasons stated therein, but at the time of the application for insurance and the reception of the initial premium, or the doing of such other act as completes the contract of insurance, the company knows that statements contained in the application are not true, it will not be heard to say, in defense to an action on the policy, that the insured did not comply with the conditions of the contract, and will be treated as having waived the conditions. Thus, in the case of *Johnson* v. *Ætna Ins. Co.,* supra, it was held: "Where a policy of fire insurance contained a stipulation that it should be void 'if the subject of insurance be a building on ground not owned by the insured in fee simple,' but at the time the application for insurance was made the company, through its agent, knew that the applicant did not own the land on which the building sought to be insured was situated, it will not be heard, in defense to an action on the policy, to set up the noncompliance of the plaintiff with this condition of the contract." See the body of the decision, 123 *Ga.* 406 (51 S. E. 340, 107 Am. St. R. 93), and the cases there cited. And see, to the same effect, the following cases: *German American &c. Ass'n* v. *Farley,* 102 *Ga.* 720 (3), 741 (29 S. E. 615); *Springfield Fire Ins. Co.* v. *Price,* 132 *Ga.* 687 (64 S. E. 1074); *Home Friendly Society* v. *Berry,* 94 *Ga.* 606 (21 S. E. 583); *Piedmont &c. Ins. Co.* v. *Lesler,* 59 *Ga.* 813 (3); *Cotton States Life Ins. Co.* v. *Lester,* 62 *Ga.* 247 (35 Am. R. 122); *Cotton States Life Ins. Co.* v. *Edwards,* 74 *Ga.* 221 (*a*); *Fair* v. *Metropolitan Life Ins. Co.,* 5 *Ga. App.* 708 (63 S. E. 812); *Farmers Mutual Life Protective Ass'n* v. *Elliott,* 4 *Ga. App.* 342 (61 S. E. 493). In the case of John Hancock &c. Ins. Co. *v.* Schlink, 175 Ill. 284 (51 N. E. 795), it was held: "Under a provision of an insurance policy that no person, except the president or secretary, was authorized to make alterations, discharge contracts, or waive forfeitures, an agent empowered to solicit insurance, receive applications, receive and deliver policies, and collect premiums, has authority, notwithstanding, to waive a condition that the policy shall not be effective unless the first premium was paid during the lifetime and good health of insured, by delivering said policy on an agreement to extend credit for the payment of the first premium." Rayburn *v.* Pennsylvania Casualty Co., 138 N. C. 379 (50 S. E. 762, 107 Am. St. R. 548); McMillan *v.* Ins. Co., 78 S. C. 433 (58 S. E. 1020 (8, 9), 1135); Rearden *v.*

State Mut. Life Ins. Co., 79 S. C. 526 (60 S. E. 1106) ; Hankinson
v. Piedmont Mut. Life Ins. Co., 80 S. C. 392 (61 S. E. 905).;
Modern Woodmen of America v. Lawson, 110 Va. 81 (65 S. E.
509, 135 Am. St. R. 927) ; Modlin v. Atlantic Fire Ins. Co., 151
N. C. 35 (65 S. E. 605). It follows from this line of authorities,
that when the agent of the society collected the premiums from
the insured, knowing that he was sick after the application for
the insurance policy was made and before the policy was delivered,
the company waived the conditions in the contract to the contrary.

2. After the evidence was concluded, the trial court, on motion,
directed a verdict for the plaintiff for the full amount sued for.
Error is assigned upon this direction by the court. It is insisted,
among other grounds, that it was a question of fact, for the jury
to determine, whether or not the answers of the assured to the
various questions propounded in his application were untrue, either
by misstatement or by concealment, and whether they were material
to the risk proposed, and that it was a question of fact for the
jury to determine whether or not on September 16, 1907—the
date of the application—the deceased had other insurance on his
life than that stated by him in answer to the questions propounded
to him. It appears from the record that in the application by the
insured the following question was propounded to and answered by
him : "Is your life now insured in any society or company? Yes.
If you answer 'yes,' then give the names of the societies and com-
panies and the amount in each, and the date of contract in each.
A. Fraternal Union of America, $2,400, 1898. Sun Life of Canada,
$2,000, 1907." The evidence for the defendant shows that the
insured did have still another insurance policy at the time of this
application, September 16, 1907. A policy of insurance issued to
the insured on September 19, 1904, in the Mutual Life Industrial
Insurance Company, and receipt for the payment of the death claim
under it, of date June 24, 1909, were in evidence. The application
of the insured in the present case accompanied the policy sued on,
and was introduced in evidence by the plaintiff. From the manner
in which this is set out in the pleadings and evidence, we infer that
it was attached to the policy and made a part of it. At any rate,
it does not appear that any objection was offered on the ground
that it was not so attached under the act of 1906 (Civil Code,
§ 2471). The application contained what purports to be a recital

50

of other insurance held by the insured, aside from that applied for by him on September 16, 1907. Whether this be treated as a warranty, or a representation, it was error for the trial judge to ignore it, on the assumption that it was immaterial and of no importance. If it was a warranty, it was a part of the contract; if a representation, it was material as tending to show that the policy was procured by fraud. See *Johnson* v. *American National Life Ins. Co.,* 134 *Ga.* 802-803 (68 S. E. 731). When this case was here before, there was no evidence of other insurance, and this point was not ruled on. At the last hearing there was evidence on the question, and the court directed a verdict without regard to it, which he was not authorized to do under the evidence.

*Judgment reversed. All the Justices concur.*