[183 N.C. App. 380 (2007)]

IN THE MATTER OF: Z.J.T.B., Z.J.W., E.R.L.B., MINOR CHILDREN

No. COA06-1381

(Filed 5 June 2007)

## 1. Child Abuse and Neglect— statutory amendment—appeal of prermanency planning order—termination of parental rights—jurisdiction

The order terminating respondent's parental rights was void ab initio, and therefore, did not render moot respondent's appeal of the permanency planning order, because: (1) the initial juvenile petitions alleging abuse and neglect were filed on 12 November 2004, but the petitions to terminate respondent's parental rights were filed on 19 July 2006; (2) as the statutory amendments to N.C.G.S. § 7B-1003(b) expressly apply to petitions filed on or after 1 October 2005, the amendments are applicable here; and (3) after respondent filed notice of appeal on 31 July 2006 from the permanency planning order, the trial court no longer had jurisdiction to rule on the petitions to terminate respondent's parental rights.

## 2. Child Abuse and Neglect— permanency planning order— sufficiency of findings of fact

The trial court erred in a child abuse and neglect case by concluding in its permanency planning order that further efforts towards reunification should be ceased and a permanent plan for adoption should be established without making the necessary findings of fact, and the case is remanded for entry of adequate findings of fact and conclusions of law under N.C.G.S. § 7B-907, because: (1) in four of the nine findings of fact, the trial court merely adopted and incorporated its prior orders, a DSS permanency planning report, and a DSS home study report; and (2) the trial court failed to make specific findings of fact as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time.

Appeal by respondent-mother from order entered 17 July 2006 by Judge David V. Byrd in Wilkes County District Court. Heard in the Court of Appeals 30 April 2007.

*Robert W. Ewing, for respondent-mother-appellant.*

*No brief filed for petitioner-appellee Wilkes County Department of Social Services.*

IN RE Z.J.T.B., Z.J.W., E.R.L.B.

[183 N.C. App. 380 (2007)]

JACKSON, Judge.

C.L.W. ("respondent"), mother of the minor children Z.J.T.B., Z.J.W., and E.R.L.B.,[1] appeals from a permanency planning order filed on 17 July 2006 that ceased further efforts toward reunification and established a permanent plan of adoption.[2] For the reasons stated herein, we vacate the trial court's order and remand for additional findings of fact.

On 12 November 2004, the Wilkes County Department of Social Services ("DSS") filed petitions alleging that Z.J.T.B. and Z.J.W. were neglected and abused. On 15 August 2005, DSS presented evidence that Z.J.T.B., who was three months old at the time the petitions were filed, had numerous fractures on his body, including fractures to his ribs, clavicle, and tibia. DSS further presented evidence that Z.J.T.B.'s injuries were the result of being physically abused. Z.J.W. showed no signs of physical injuries, and DSS presented no evidence of abuse with respect to Z.J.W. The trial court found that Z.J.T.B. and Z.J.W. resided with respondent and Z.J.T.B.'s father[3] and that "[s]ome adult caretaker in the home . . . physically abused Z[.J.T.B.]." Both respondent and Z.J.T.B.'s father, however, professed ignorance of the cause of Z.J.T.B.'s injuries and denied involvement in the same. Subsequently, the trial court (1) adjudicated Z.J.T.B. abused and neglected; (2) adjudicated Z.J.W. neglected; and (3) concluded that it was contrary to the welfare of either child to return to respondent at that time.

Z.J.T.B. and Z.J.W. were placed with their maternal grandparents, and at a review hearing on 12 December 2005, the trial court noted that despite being permitted extensive visitation with her children, respondent did not "avail[] herself of all of the opportunities which she . . . had to visit the children while they were in her mother's

---

1. At various points in the record on appeal, E.R.L.B. also is referred to as "E.R.L.L.B.," "E.L.G.B.," "E.G.L.B.," and "E.G.B." For sake of clarity, this opinion will refer to the child as E.R.L.B.

2. The trial court's order applied to all three children, but respondent only filed notice of appeal with respect to Z.J.T.B. and Z.J.W. Although the Appellate Entries reference E.R.L.B., "mere appellate entries are insufficient to preserve the right to appeal." *In re Me.B.*, 181 N.C. App. 597, 600, 640 S.E.2d 407, 409 (2007). " 'Without proper notice of appeal, the appellate court acquires no jurisdiction and neither the court nor the parties may waive the jurisdictional requirements even for good cause shown under Rule 2 [of the Rules of Appellate Procedure].' " *Id.* (alteration in original) (quoting *Finley Forest Condo. Ass'n v. Perry*, 163 N.C. App. 735, 741, 594 S.E.2d 227, 231 (2004)).

3. The parental rights of Z.J.W.'s biological father were terminated on 10 May 2004, and Z.J.W.'s biological father is not a party in this case.

home." The trial court found as fact that respondent has "intellectual limitations" and "receives some type of disability benefit for these limitations." The trial court further found that "the maternal grandmother requested that the children be removed from her home due to health concerns as well as increasing conflict between the grandmother and the mother of the children." Consequently, the children were placed in a foster home, but the trial court noted that they were "doing well."

On 17 April 2006, the trial court entered an order from a permanency planning review hearing, once again questioning respondent's credibility and finding that "[n]either parent has admitted responsibility for the injuries suffered by Z[.J.T.B.]. The parents have given conflicting explanations . . . [and] [e]ach parent has given one or more possible explanations for Z[.J.T.B.]'s injuries; and that these explanations have changed over time." The court reiterated that respondent "is of limited intelligence" and further noted that she "has [a] history of suicidal statements . . . [and] of abusing prescription drugs." Additionally, the court found that respondent refused therapy and treatment recommended to her by DSS.

On 22 May 2006, the trial court held another permanency planning review hearing, and by order filed 17 July 2006, the trial court found that because of respondent's lack of progress and because of the lack of suitable placement with any relative, return of either the minor children was not possible within six months. Therefore, the trial court (1) concluded that adoption was the appropriate permanent plan; and (2) relieved DSS from the requirement of pursuing reasonable efforts to eliminate the need to place the minor children with respondent. Respondent filed timely notice of appeal from this order.

[1] Preliminarily, we note that on 9 February 2007, the trial court entered an order terminating respondent's parental rights. Our Supreme Court has held that the "pending appeal of a custody order does not deprive a trial court of jurisdiction over termination proceedings," *In re R.T.W.*, 359 N.C. 539, 542, 614 S.E.2d 489, 491 (2005), and that the court's entry of a termination order while an appeal is pending from a permanency planning order "necessarily renders the pending appeal moot." *Id.* at 553, 614 S.E.2d at 498; *see also In re Stratton*, 159 N.C. App. 461, 464, 583 S.E.2d 323, 325 (holding that an order terminating parental rights rendered moot an appeal from an initial adjudication and disposition), *appeal dismissed and disc. rev. denied*, 357 N.C. 506, 588 S.E.2d 472 (2003).

**IN RE Z.J.T.B., Z.J.W., E.R.L.B.**

[183 N.C. App. 380 (2007)]

Subsequent to our Supreme Court's decision in *R.T.W.*, however, the General Assembly amended North Carolina General Statutes, section 7B-1003(b) to restrict the scope of the trial court's jurisdiction while an appeal is pending under Chapter 7B. Specifically, the amendment provides that "[p]ending disposition of an appeal, . . . the trial court shall . . . [c]ontinue to exercise jurisdiction and conduct hearings under this Subchapter *with the exception of Article 11 of the General Statutes.*" N.C. Gen. Stat. § 7B-1003(b)(1) (2005) (emphasis added). Article 11, in turn, governs the termination of parental rights, and pursuant to section 7B-1101, "[t]he [district] court has exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights." N.C. Gen. Stat. § 7B-1101 (2005). Thus, "pending disposition of an appeal, the trial court no longer continues to exercise jurisdiction over termination proceedings." *In re A.B.*, 179 N.C. App. 605, 608 n.2, 635 S.E.2d 11, 14 (2006).

As expressly provided, the statutory amendment "applies to *petitions* or *actions* filed on or after [1 October 2005]." 2005 N.C. Sess. Laws ch. 398, § 19 (emphases added); *see also A.B.*, 179 N.C. App. at 608 n.2, 635 S.E.2d at 14. The amendment, however, does not exempt petitions filed in actions initiated prior to 1 October 2005. It is well-established that "[o]ur General Assembly 'within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State.' " *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) (quoting *Bullington v. Angel*, 220 N.C. 18, 20, 16 S.E.2d 411, 412 (1941)). In effect, the legislature has divested trial courts of jurisdiction over petitions to terminate filed on or after 1 October 2005 when there is a pending appeal, regardless of when the initial action was commenced. So, "[t]o paraphrase a biblical quotation, that which the legislature giveth, so may it taketh away." *Alterman Transp. Lines v. State*, 405 So. 2d 456, 460 (Fla. Dist. Ct. App. 1981) (per curiam).

In the case *sub judice*, the initial juvenile petitions alleging abuse and neglect were filed on 12 November 2004, but the petitions to terminate respondent's parental rights were filed on 19 July 2006. As the statutory amendments to section 7B-1003(b) expressly apply to petitions filed on or after 1 October 2005, the amendments are applicable here. Therefore, after respondent filed notice of appeal on 31 July 2006 from the permanency planning order, the trial court no longer had jurisdiction to rule on the petitions to terminate respondent's parental rights. " 'Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain

limitations, an act of the Court beyond these limits is in excess of its jurisdiction.' " *T.R.P.*, 360 N.C. at 590, 636 S.E.2d at 790 (quoting *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975), *overruled on other grounds by Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982)). " 'A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity.' " *Id.* (quoting *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964)). Consequently, the order terminating respondent's parental rights was void *ab initio* and, therefore, did not render moot respondent's appeal of the permanency planning order.

**[2]** Turning to the merits of this appeal, respondent first contends that the trial court failed to make sufficient findings of fact in its permanency planning order. We agree.

Pursuant to North Carolina General Statutes, section 7B-907, the trial court at a permanency planning hearing must "consider information from the parent, the juvenile, the guardian, any foster parent, relative or pre-adoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid it in the court's review." N.C. Gen. Stat. § 7B-907(b) (2005). If, at the conclusion of the permanency planning hearing, the trial court determines the child is not to return home, the trial court is required to consider certain criteria and make written findings of fact on those criteria that are relevant to the case. *See id.* Those criteria are:

(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

**IN RE Z.J.T.B., Z.J.W., E.R.L.B.**

[183 N.C. App. 380 (2007)]

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;

(6) Any other criteria the court deems necessary.

*Id.* Furthermore, "[a]t the conclusion of the hearing, the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(c) (2005).

As this Court has clarified, "the Juvenile Code does not require a permanency planning order to contain a formal listing of the § 7B-907(b)(1)-(6) factors, 'as long as the trial court makes findings of fact on the relevant § 7B-907(b) factors[.]' " *In re L.B.*, 181 N.C. App. 174, 190, 639 S.E.2d 23, 31 (2007) (alteration in original) (quoting *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004)). Further, the "findings of fact must be 'sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment.' " *In re J.S.*, 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) (*quoting Quick*, 305 N.C. at 451, 290 S.E.2d at 657).

Respondent argues that the trial court failed to make particular findings of fact with respect to the third and fourth criteria in section 7B-907(b), to wit: "whether adoption should be pursued and if so, any barriers to the juvenile's adoption" and "whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why." N.C. Gen. Stat. § 7B-907(b)(3), (4) (2005). Respondent also argues that the trial court failed to make sufficient "specific findings of fact as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(c) (2005).

In its order filed 17 July 2006, the trial court made only the following nine findings of fact:

1. The status of the above-named children is accurately described in that certain Court Summary prepared by Social Worker, Laurel Ashley, under date of May 22, 2006. This Summary was admitted into evidence and was incorporated herein as Findings of Fact.

2. The Court also admitted into evidence and incorporates herein a study of the home of . . . [the] maternal grandmother and step-grandfather of the above-named children. This home study was prepared by Ms. Ashley and is dated May 22, 2006.

3. Neither the Department of Social Services nor the Guardian *Ad Litem* recommends placement of the children with the maternal grandmother. [The maternal grandmother] is the only relative who is currently willing and able to provide care for the children.

4. [The maternal grandmother] had physical placement of Z[.J.T.B.] and Z[.J.W.] until November, 2005, when she surrendered these children to the Department of Social Services because of health reasons and other issues. Reference is made to prior Orders entered in these matters which address the circumstances surrounding the surrender of the children.

5. The Court incorporates as Findings and adopts as Findings of this Court those items and things which appear on page 4 of the aforesaid home study until the title: "Summary and Recommendations."

6. The Court also incorporates by reference those items and things set forth in Orders entered in the above matters as a result of hearings held on April 4, 2006, before the undersigned.

7. Because of the problems with placement of the children with the grandmother, the mother's limitations and lack of progress as set forth in prior Orders, and the lack of any other relatives who are suitable for placement, return of the children to the home of a parent is not possible within six (6) months, nor is placement of custody or guardianship with a relative or other suitable person the appropriate Plan.

8. There are no barriers to the children's adoptions.

9. The Wilkes County Department of Social Services has utilized reasonable efforts to eliminate the need for placement; and that as previously found, continuation of such efforts would be futile and contrary to the children's need for a safe, permanent home within a reasonable period of time.

These findings are insufficient to satisfy the requirements of section 7B-907(b) or (c).

As a preliminary matter, it must be noted that in four of the nine findings of fact—specifically, Findings of Fact numbers 1, 2, 5, and 6—the trial court merely adopted and incorporated its prior orders, a DSS permanency planning report, and a DSS home study report. "In juvenile proceedings, it is permissible for trial courts to consider all written reports and materials submitted in connection with those

**IN RE Z.J.T.B., Z.J.W., E.R.L.B.**

[183 N.C. App. 380 (2007)]

proceedings." *J.S.*, 165 N.C. App. at 511, 598 S.E.2d at 660. Nevertheless, "[d]espite this authority, the trial court may not delegate its fact finding duty" by relying wholly on DSS reports and prior court orders. *Id.* It is well-established that "[w]hen a trial court is required to make findings of fact, *it must make the findings of fact specially.* Additionally, the trial court may not simply recite allegations, but must through processes of logical reasoning from the evidentiary facts find the ultimate facts essential to support the conclusions of law." *In re Weiler*, 158 N.C. App. 473, 478, 581 S.E.2d 134, 137 (2003) (emphasis added) (internal quotation marks, alteration, and citations omitted).

Pursuant to section 7B-907(c), the trial court must "make specific findings of fact as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(c) (2005). In its oral rendition of judgment, the trial court did not make any findings of fact as to the best plan of care for Z.J.T.B. or Z.J.W. Rather, the trial court simply noted that despite the fact that respondent loves her children, the court felt it was "really not left with a lot of options," and given the recommendations of DSS and the guardian *ad litem*, the court approved DSS's request to change the permanency plan to adoption. Similarly, in its written order, the trial court did not make any written findings of fact with respect to the best plan of care to achieve a safe, permanent home for Z.J.T.B. and Z.J.W. within a reasonable period of time. The court rejected the continuation of "efforts to eliminate the need for placement" as being "futile and contrary to the children's need for a safe, permanent home within a reasonable period of time." The court, however, did not make specific findings of fact that adoption constituted the best plan of care for the children. Accordingly, the trial court failed to comply with the statutory requirement in section 7B-907(c).

With respect to the criteria outlined in section 7B-907(b), the requirements pursuant to section 7B-907(b)(1) are satisfied by Findings of Fact numbers 3, 4, and 7; Findings of Fact numbers 3 and 4 satisfy section 7B-907(b)(2); and section 7B-907(b)(5) is satisfied by Finding of Fact number 9. The trial court's findings, however, do not satisfy the requirements of sections 7B-907(b)(3) or 7B-907(b)(4). Although the trial court provided in Finding of Fact number 8 that "[t]here are no barriers to the children's adoption,"[4] the trial court

---

4. Arguably, this finding is not supported by competent evidence, as the DSS report provides that "[t]he barriers that exist include the mother's statements that she will appeal the case in court as long as possible to continue 'fighting for my children,' and refuses to sign a relinquishment. The father is unlikely to sign a relinquishment."

made no specific finding pursuant to section 7B-907(b)(3) as to "whether adoption should be pursued." Additionally, the trial court made no finding pursuant to section 7B-907(b)(4) as to "whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why." In fact, the trial court's findings contain no description of the current placement of Z.J.T.B. or Z.J.W. Although the children's placement in a foster home is discussed in the guardian *ad litem's* report completed for the 22 May 2006 hearing, the trial court failed to incorporate and adopt this report in its findings of fact.[5]

Assuming *arguendo* that competent evidence would support such findings, the trial court must make findings of fact specially to satisfy the requirements imposed upon it by North Carolina General Statutes, section 7B-907(b). We are unable to determine, however, whether competent evidence exists in the record to support findings made pursuant to section 7B-907(b). The only DSS report submitted to the trial court for the 22 May 2006 permanency planning hearing that is contained in the record on appeal is a report concerning respondent's youngest child, who is not the subject of this appeal.[6] The record is devoid of any DSS report submitted for the hearing at issue concerning Z.J.T.B. or Z.J.W. In fact, the only report specifically discussing Z.J.T.B. and Z.J.W. submitted for this permanency planning hearing that is included in the record on appeal is the report of the guardian *ad litem*, and as stated *supra*, the trial court failed to incorporate and adopt this report in its findings of fact.

Accordingly, we remand this case to the trial court for entry of adequate findings of fact and conclusions of law pursuant to section 7B-907, and in light of our decision, we do not reach respondent's remaining assignment of error.

Vacated and Remanded.

Judges STEPHENS and STROUD concur.

5. It is unclear from the record whether the trial court reviewed the guardian *ad litem's* report prior to entering its order. At the hearing, the guardian *ad litem* asked the court whether it received the report, to which the court responded, "No, I do not believe I did."

6. Although this Court acknowledges the possibility that a report for each child was presented to the trial court and that the reports for Z.J.T.B. and Z.J.W. were omitted from the record on appeal, the transcript references only one report, with the trial court asking DSS, "Does the Department have any other evidence other than *the Court Report* that was given to me as well as . . . [the] study of the grandmother's residence?" (Emphasis added).