**Lowell HARLOW (Widow: Elizabeth)**

**v.**

**EMERY–WATERHOUSE COMPANY and American Mutual Liability Insurance Company.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1984.

Decided Dec. 4, 1984.

McTeague, Higbee & Libner, Patrick N. McTeague (orally), Brunswick, for plaintiff.

Hewes, Culley, Feehan & Beals, Allison Denham (orally), Portland, for defendants.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Emery-Waterhouse Company and its insurer, American Mutual Liability Insurance Company, appeal from a decision of the Appellate Division of the Workers' Compensation Commission vacating the Commissioner's dismissal of Elizabeth Harlow's petition for an award of compensation for the death of her husband, Lowell Harlow. The defendants argue that the Appellate Division erred in asserting subject-matter jurisdiction and contend that the dismissal of the petition should have been affirmed. We find no error in the ruling of the Appellate Division and we deny the appeal.

I.

Emery-Waterhouse Company, a hardware wholesaler, engages in sales activity in nine of the northeastern states. The company maintains its principal office and warehouse in Portland, Maine. Apart from a small number of direct sales, virtually all sales orders are filled from the Portland warehouse. Lowell Harlow was hired as a salesman, pursuant to an oral contract entered into in Massachusetts, and was assigned exclusively to an area including western Massachusetts and northwestern Connecticut. During his employment, Mr. Harlow's contacts with Maine consisted of forwarding paperwork and transmitting telephone orders to the Portland office. In addition his paycheck was mailed from

Portland and occasionally he attended overnight sales meetings held in Maine.

In January of 1981, Mr. Harlow suffered a fatal heart attack in Massachusetts, while attempting to free his car from a snowbank. It is alleged that he was on his way to visit a customer when the incident occurred. Plaintiff Elizabeth Harlow filed a petition for an award under the Maine Workers' Compensation Act, and defendants answered asserting *inter alia*, that the Commission lacked subject-matter jurisdiction over plaintiff's claim.[1] A hearing on the issue of subject-matter jurisdiction was held and the Commissioner dismissed plaintiff's petition for lack of subject matter jurisdiction. The Commissioner found that although the employer had a substantial business presence in Maine, the employee had very little contact with the State. The Commissioner ruled that Maine lacked sufficient contact with the facts of the case to "create a valid state interest in the exercise of jurisdiction."

Plaintiff appealed the dismissal to the Appellate Division pursuant to 39 M.R.S.A. § 103–B (Supp.1983–1984). The Appellate Division found that the employer's business was localized in Maine, and "that the employment relationship partly exists and is partly carried out in Maine." Based on the combination of these factors, the Appellate Division found sufficient support for the assertion of subject-matter jurisdiction and remanded the petition for hearing on the merits. Defendants appeal.

## II.

The analytical framework of the present case rests on the recognition that the legislature has not chosen to restrict the subject-matter jurisdiction of the Workers' Compensation Commission. As we have previously noted:

[T]he only limitations to be asserted upon the subject-matter jurisdictional reach of the ... Commission are those which must be read into the statute as implicit limitations imposed by the 'due process' clause of the federal Constitution.

*Shannon v. Communications Satellite Corporation*, 302 A.2d 582, 584 (Me.1973). The state interests or "contact" points relevant to a consideration of the limitations imposed by the due process clause of the federal Fourteenth Amendment are:

(1) place injury occurred; (2) place contract of employment was entered into; (3) place employment relationship exists or is carried out; (4) place in which the business or industry is localized; (5) place of employee's residence; (6) the place the parties might have expressly designated in their employment contract to govern (by its law) their workmen's compensation rights and liabilities.

*Id.* at 585.

The Commissioner found in this case that the only contact with Maine resulted from the fact that the employer's business is localized in Maine. The Commissioner concluded that due process prohibits the assertion of jurisdiction on that factor alone. On review, the Appellate Division first found that an additional contact existed; namely, that the employment relationship was carried out, in part, within the State of Maine, and concluded that the two factors in combination removed any due process limitation. Our first task is to resolve the number of relevant contacts presented by the facts of this case.

Defendants observe that the Commissioner found as a fact that the employment was carried out in Massachusetts. Relying on 39 M.R.S.A. § 103–B(2) (Supp. 1983–1984), they argue that such a factual finding is binding on both the Appellate Division and this Court. The historic fact that only certain limited aspects of the employment relationship were carried out in Maine is not in dispute. The conclusion

---

1. The parties stipulated that: (1) the compensation policy issued by the insurer was filed with both the Massachusetts Division of Industrial Accidents and the Maine Workers' Compensation Commission, and (2) the death benefits would be $332.17 per week under Maine law and $122.00 per week under Massachusetts law.

to be drawn from that fact, however, is a question of law and, as such, it is reviewable on appeal. *See Dunton v. Eastern Fine Paper Company*, 423 A.2d 512, 514 (Me.1980). Although it is clear that a majority of the total aspects of the employment relationship were carried out beyond the boundaries of Maine, that does not negate the contact created by the partial execution of the employment relationship within the state. In *Shannon* we noted, in discussing localization, that the degree of contact does not have to be "sufficiently maximal to exclude other places in which the business of the employer operates." *Id.* at 586. In this case the point of contact with Massachusetts arising from the employment relationship and the similar point of contact with Maine are not mutually exclusive. Both points exist and each enters into the matrix for an evaluation of that state's interest. The Commissioner's factual findings demonstrate that at least a part of the total employment relationship was carried out in Maine. The employee's business trips to Maine, business calls and orders made to Maine, and paychecks sent from Maine establish a connection relevant to a due process analysis. The Commissioner erred in ruling that the employment was carried out only in Massachusetts.

### III.

■ Although there may be doubt whether business localization alone is sufficient to satisfy due process requirements, we hold that the two factors present in this case, when combined, are sufficient to support the assertion of subject-matter jurisdiction. Maine, as the state where the employment relationship is carried out in part, "has an interest in regulating the rights and welfare of employees and the corresponding obligations and immunities of employers." 4 A. Larson, *Workman's Compensation Law*, § 86.34 (1981). As a state where the business is localized, Maine "has a special interest, in that the burdens and costs of compensation fall most directly upon employers and consumers in the area where the industry is centered." *Id.* Cumulatively, the interests of Maine overcome the limitations imposed by due process. As Professor Larson suggests: "the test is not whether the interest of the forum state is relatively greater, but only whether it is legitimate and substantial in itself." *Id.* at § 86.35.

### IV.

Neither the Commissioner nor the Appellate Division addressed the question which remains: Can the Commission apply the provisions of the Maine Workers' Compensation Act to these facts without violating the Full Faith and Credit Clause of the Constitution of the United States? Although the due process clause and the "full faith and credit" clause involve a similar analytic approach, the focus of each inquiry is distinct. The former clause is directed toward fairness to the litigants before the court; while the latter focuses on infringement of the power of other sovereign states.

■ The inquiry required by the full faith and credit clause is set forth in *Allstate Insurance Company v. Hague*, 449 U.S. 302, 312–313, 101 S.Ct. 633, 639–640, 66 L.Ed.2d 521 (1981) as follows:

[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

Although the aggregation of contacts present in this case is far from overpowering, the standard is no more exacting than that imposed by the requirements of due process. *Id.* at 308 n. 10, 101 S.Ct. at 637 n. 10. In *Hague* the Supreme Court found three contacts which in aggregate supported the forum state's choice of its own law. First and most important, the deceased had been employed in the forum state, although he was not engaged in his employment at the time of the accident. Second, the defendant was at all times

present and doing business in the forum state, and could reasonably expect to be bound by the law of the forum state. Third, the plaintiff widow became a resident of the forum state after the occurrence but prior to the institution of the claim. The present case is distinguished from *Hague* only by the absence of the third contact.[2] We conclude, however, that the application of Maine law on the facts of this case is neither arbitrary nor fundamentally unfair to the defendants. As an employer principally located in this State, Emery-Waterhouse Company could reasonably expect to be governed by Maine law even with respect to those employees who are assigned to a sales territory outside the state.

The entry must be:

Order of the Appellate Division vacating dismissal and remanding for further proceedings affirmed.

All concurring.

---

**2.** In *John Hancock Mutual Life Insurance Company v. Yates,* 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936), plaintiff's change in residence to the forum state after the occurrence, standing alone, was found to be insufficient.